833 F.2d 1011
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry BLALOCK, Plaintiff-Appellant,
v.
METALS TRADES, INC., Defendant-Appellee.
 No. 86-4021.
 United States Court of Appeals, Sixth Circuit.
 Nov. 30, 1987.
 
 Before BOYCE F. MARTIN, Jr., and ALAN E. NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from the second judgment entered by the district court in favor of defendant Metals Trades, Inc. The first such judgment was reversed by this court in a decision reported at 775 F.2d 703 (6th Cir.1985). The basic facts of the case are set forth in that decision, and we shall not repeat them here. On remand, the district court reviewed the record of the trial (a trial that had been conducted by the court without a jury), heard oral argument on the proper disposition of the case in light of this court's opinion, and addressed the question whether plaintiff Blalock's work performance was seen by defendant Metals Trades as being so poor that Mr. Blalock would have been discharged even if he had never departed from his initial religious views. After reviewing the evidence and making findings as to the credibility of Mr. Woodward, the key actor in the discharge, the district court concluded that the defendant employer had "proved by a preponderance of the evidence that Blalock would have been discharged at the same time even absent the impermissible factor of religious discrimination." We cannot say that this finding was clearly erroneous, and we shall therefore affirm the judgment of the district court.
 
 
 2
 The court found that Mr. Blalock's performance on the job left much to be desired from the very outset--as Mr. Brewer, one of the principals of Metals Trades, recognized early on. For one thing, Mr. Blalock had a flexible work schedule, devoting only two or three days a week to his job as a salesman at Metals Trades, and it was important that he let his superiors know, in advance, when he was going to be working; he repeatedly failed to apprise the company of his projected schedule, and this created a significant problem because customers calling in to speak with Mr. Blalock could not be told when he would be able to get back to them. For another thing, Mr. Blalock used the desks of his superiors, and had a habit of leaving the desks in a mess. He had a patronizing attitude that others found offensive, he wasted too much time agonizing over insignificant mechanical tolerances, and his performance was deficient in other respects. His superiors repeatedly urged him to change his ways, and he repeatedly promised to do so, but didn't. It seems clear from the record that Mr. Blalock's tenure might well have been shorter than it was but for his religion. The district court thought that Mr. Blalock's religion did not entitle him to immortality at Metals Trades, and we agree.
 
 
 3
 It is true that Mr. Woodward, one of the two men responsible for deciding whether Mr. Blalock would stay or go, was a deeply religious person who felt--as millions of adherents of a variety of religions feel--that there was a spiritual dimension to many of his secular activities and decisions. Mr. Woodward sought divine guidance on his problem with Mr. Blalock--a circumstance that probably worked in Mr. Blalock's favor for a period of time--and the final decision to terminate Mr. Blalock's employment came after Mr. Woodward, having come across the phrase "feigned obedience" in one of the psalms, realized that Mr. Blalock was "feigning obedience" when he promised to correct his poor work habits without having any intention to do so. It is not illegal to discharge an unsatisfactory employee who repeatedly promises to improve his performance but fails to do so, and a legal discharge does not become illegal simply because it is explained in language taken from the King James version of the Bible or because a reading of the Bible happens to focus the employer's thoughts on the nature of the problem. If Mr. Woodward had been moved to fire a demonstrably lazy employee after reading the biblical verse that says "Go to the ant, thou sluggard; consider his ways, and be wise," we take it that the employer's reading habits would not have rendered the discharge illegal.
 
 
 4
 It is true that Mr. Blalock's refusal to discuss a reconciliation with the religious leader John Rothacker played a part in the discharge, and the district court might well have been justified in interpretating the evidence as showing that Mr. Blalock would not have been discharged but for his falling out with Mr. Rothacker. The district court saw and heard the witnesses as they testified, however, and we did not; the district court "found Woodward to be an extremely credible witness and [the court] fully accept[ed] his testimony that he made the decision to discharge Blalock for 'strictly secular or work related problems.' " The district court found as a fact that "it was Blalock's poor work performance and his insubordinate or 'feigned obedience' attitude towards his employers that caused him to be discharged," and we have no basis for concluding that the district court's factual findings were clearly erroneous. Under Rule 52, Fed.R.Civ.P., the findings may not be set aside on appeal. Cf. Goostree v. Tennessee, 796 F.2d 854, 861 n. 2 (6th Cir.1986), cert. denied, 107 S.Ct. 1374 (1987).
 
 
 5
 AFFIRMED.
 
 
 6
 CONTIE, Senior Circuit Judge, dissenting.
 
 
 7
 The majority has determined that the district court's finding that Blalock would have been discharged at the same time even absent the impermissible factor of religious discrimination was not clearly erroneous. I do not agree.
 
 
 8
 The majority and the district court have placed great weight on Woodward's conclusory testimony that he made the decision to discharge Blalock for strictly secular or work related problems. I believe, however, that this testimony and the district court's findings are implausible in light of the admissions made by Woodward at trial.
 
 
 9
 At trial, Woodward admitted that at the time of the discharge he told Blalock that he wanted to talk to him about John Rothacker. In explaining what he meant by this, he gave the following testimony: "[s]o I kind of felt in my own heart, in my own mind, that in order to have his work attitudes change around to where he could be a productive employee that he was going to have to get the situation straightened out between him and John first." Further, Woodward admitted that, at the time of the discharge, he told Blalock that "until he got things resolved with Mr. Rothacker he was laid off." Woodward's admission that Blalock's job was contingent on reconciliation with Rothacker leads to the conclusion that Blalock would not have been fired if he did not have a falling out with Rothacker, and that he could have regained his job if he resolved his differences with Rothacker. In the face of these admissions, the district court found that Blalock would have been fired at the same time even absent the impermissible factor of religious discrimination--i.e., his split with Rothacker. Given the evidence, I believe that this finding is implausible.
 
 
 10
 Because I believe that the evidence shows that Blalock would not have been discharged had he reconciled with Rothacker, I would find that the district court's findings are clearly erroneous. Accordingly, I would reverse the district court's judgment and remand with instructions to enter judgment for plaintiff and to determine damages.